1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

9
10

ROSALIE A. McALLISTER (F.K.A.
ROSALIE A. REICHL),

11
                     Plaintiff,

12
    v.

13
PACIFIC MARITIME ASSOCIATION;

14
JOINT PORT LABOR RELATIONS
COMMITTEE OF THE WASHINGTON

15
PUGET SOUND AREA; FOREMEN JOINT
LABOR RELATIONS COMMITTEE

16
TACOMA, WASHINGTON; and JOSEPH
WEBER, an individual,

17
                    Defendant.

**Case No.** C07-0700 JPD

ORDER Re:
Referral for Settlement Agreement
Interpretation

18
19

       This matter was initially filed in Superior Court. It was thereafter removed to the United

20
States District Court. Plaintiff's Motion to Remand to State Court was denied. The case was

21
assigned to the Honorable Thomas S. Zilly. It was thereafter reassigned to the Honorable James

22
P. Donohue pursuant to 28 U.S.C. 636 (c)(1). Prior to the reassignment to Judge Donohue, the

23
case came before the undersigned on an order of reference from Judge Zilly, pursuant to

24
Stipulation and Order dated August 30, 2007. The order of reference arises out of a Settlement

25
Agreement Provision in the *Scott* and *Thompson* cases hereinafter referred to. At paragraph 17 of

26
a written settlement agreement referencing both cases, dated June 25, 1997, the parties agreed as

27
follows:

           "Any disputes or disagreements as to the terms or meaning of this

28
Order - 1

Agreement or any of its provisions, shall be submitted to and resolved by Magistrate Judge J. Kelley Arnold for binding determination."

Plaintiff, McAllister, and others filed a lawsuit (*Thompson et al., v. ILWU et al.* C96-05475FDB) against the Pacific Maritime Association (PMA) claiming gender-based employment discrimination on the Tacoma waterfront. A second action addressing the issue of women being promoted to the position of "foreman" on the Waterfront by the PMA, *Scott et al. v. ILWU et al.* C97-5950 (class certified) was filed as well.

The *Thompson* case was settled in June of 1997. It was not a class action suit and did not need court approval. The *Scott* class action settlement agreement was entered into in September of 1997 and was approved by the Honorable Franklin D. Burgess on January 8, 1998. The September 25, 1997 agreement provides at paragraph 8, as follows:

"Recruitment and Registration of Women. In order to recruit and retain more women into the industry, PMA and the International and Local 23 and Local 98 agree to:

(A) A five-year hiring goal that ensures that women comprise at least 20% of all future additions to the Identified Casual list, at least 10% of all clerks class A Transfers to the clerks' list, to be calculated for each ten persons added to the respective list. In addition, Local98 and PMA agree that at least one out of every five foremen registered in Tacoma will be a female and to register a minimum of 15 foremen in Tacoma in the next five years.[1]

(C) The class B registration of six Identified Casual women, who shall be elevated to class A as if they were registered with the April, 1995 group and elevated to Class A status based on their random sequence number at the rate of four per month plus attrition.

(D) Transfer of Linda Nyland from class A longshore to the class A clerks' list in the current transfer program.

In the case at bar, plaintiff complains that PMA failed to comply in good faith with their obligations as set forth in paragraph 8 of the aforementioned Settlement Agreement, specifically alleging sexual discrimination and retaliation by failing to comply with the Washington Law Against Discrimination (WLAD), R.C.W. 49.60. More specifically, plaintiff claims she was entitled to be promoted and registered during the years 2001, 2002, 2003, 2004, and 2005. The undisputed facts appear to be as follows:

(a) in the five year period (1998–2002) two females out of fifteen longshore workers were

---

[1] Plaintiff claims the agreement was for an indefinite period. Defendants claim the five year agreement applied to the calendar years 1998, 1999, 2000, 2001, and 2002 expiring no later than the end of 2002.

Order - 2

registered as foremen.  The lead plaintiff in the *Scott* case (Ronalyn Scott) was registered before the Settlement Agreement was signed in 1997.    If her registration was to be considered in terms of agreement compliance,  three females out of seventeen longshore workers would have been registered before the end of 2002.

(b) in December of 2002, plaintiff McAllister, submitted a request to be added to the foremen list, and was subsequently eligible for consideration subject to her application, and that she applied for selection and registration as a foremen in 2003.

(c) plaintiff continued to apply for selection as a registered foremen each year thereafter, and was ultimately promoted to foreman in 2006.[2]

On February 15, 2008, this court entered an Order directing the parties to agree upon and recite with specificity the issue they seek *this court* to resolve. Thereafter both plaintiff and defendants submitted cross submissions and responses presenting the issue differently.  On April 26, 2008, this court held a telephone conference with counsel and requested they comply with the February 15 order and submit a joint statement of the issue to be resolved by *this court*.  The parties promptly complied, submitting the following issues for resolution by this court:

(1) Did defendant Pacific Maritime Association breach the following provision in the Settlement Agreement approved by this Court?

> In addition, Local 98 and PMA agree that at least one out of every five foremen registered in Tacoma will be female and to register a minimum of 15 foremen in Tacoma in the next five years.

(2) Did the provision that "PMA agree(s) that at least one out of every five foremen registered in Tacoma will be female" expire at the end of five years?

(3) If this provision expired at the end of five years, when did the five-year period begin to run– when the Settlement Agreement was signed, or when the settlement received final approval by the court?

Addressing the matters in the order presented, the court finds as follows:

## Discussion

Although the parties argue the "effective" date of the Settlement Agreement, it is undisputed that (i)the agreement was signed by the parties June 25, 1997, and approved by the

---

[2]Plaintiff alleges her December 2002 application was for a "registered"foreman position. Defendant alleges the application was for a "casual" foreman position.

Order - 3

court January 8, 1998; (ii) that unless Ronalyn Scott's appointment is counted there would not have been 3 female registered female foremen before the end of 2002; and (iii) that if Ronalyn Scott's selection is counted there was arguable compliance with selection of 3 females until the total number selected reached 20, in which case the number of females selected should be four. Because Ronalyn Scott was selected in April of 1997, before the Settlement Agreement was entered into, and because the Settlement Agreement makes no reference to her selection, it is not reasonable to believe that the parties intended that she be included as the agreed upon number of female registrants "in the next five years."  The court notes the use of the words "*will* be female" (emphasis supplied)  which strongly infers future selections, as well as a high degree of certainty that there was a firm agreement to select 3 females out of every 15 promoted.   Defendants accurately point out that the language regarding *clerks* and *identified casuals* utilizes the word "goal" as opposed to any word suggesting a quota which could lead to claims of reverse discrimination.   The court, however, notes in the same sentence the word "ensure" which by definition contemplates more of an obligation than defendants suggest.[3]   With regard to foremen registration the work "goal" is not used.  Plaintiff's argument that the second sentence in paragraph 8(A) of the Settlement Agreement sets forth a separate formula for the registration of foremen is persuasive.  Although certain hypothetical scenarios could render the agreement incapable of performance, i.e. no female applicants.  It is worthy of note that the agreement did not require 20% compliance each year, but rather 20% compliance over a five year period which seems to protect the defendants from allegations of noncompliance on an annual basis in order to allow for unexpected deviations in the number and gender of applicants in any given year.  This would allow the defendants to miss a year and yet require the loss be made up the next year. Certainly, impossibility, is a defense, but there has been no showing of impossibility over the five year period.  The court notes that the defendant's chart showing the registration of foremen reveals no selections of men or women between April 5, 1997 and May 9, 1998.  As there were no appointments between the June 25, 1997 Settlement Agreement (which the court has already characterized as forward looking) and the January 8, 1998 date of approval, the issue of the five year start date is irrelevant as to this issue

---

[3]Funk & Wagnalls Standard Desk Dictionary describes *ensure* as "to make sure or certain."

Order - 4

Based on the foregoing this court finds as follows:

(1) defendants did not comply with a reasonable interpretation and understanding of the agreement by failing to select 3 females from the 15 persons registered during the years 1998-2002.

(2)  that the agreement regarding the registration of females as foremen did not expire in five years, thereby making the start time moot.

(3) based on the court's ruling as set forth in(2) immediately preceding, the question of when the five year period began to run is moot.


Dated this1st day of May, 2008.


*/s/ J. Kelley Arnold*
J. Kelley Arnold
U.S. Magistrate Judge

Order - 5