UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROSALIE A. MCALLISTER (f.k.a. ROSALIE A. REICHL), <br><br> Plaintiff, <br><br> v. <br><br> PACIFIC MARITIME ASSOCIATION, et al., <br><br> Defendants. | Case No. C07-0700-JPD <br><br> ORDER DENYING DEFENDANTS' MOTION FOR ATTORNEYS' FEES |

I. INTRODUCTION AND SUMMARY CONCLUSION

This matter comes before the Court on Defendants' Motion for Attorneys' Fees. Dkt. No. 97. Plaintiff Rosalie McAllister has filed a response opposing the motion, Dkt. No. 111, to which Defendants have replied, Dkt. No. 114. After careful consideration of the motion, Plaintiff's opposition and the reply brief, the governing law, and the balance of the record, Defendants' Motion for Attorneys' Fees, Dkt. No. 97, is DENIED.

ORDER
PAGE - 1

## II. BACKGROUND

### A. The Prior Actions and the Attorneys' Fees Provision

Plaintiff has been a longshore worker at the Port of Tacoma since 1988. In May 1996, Plaintiff (along with three other female longshore workers) filed a federal lawsuit in Tacoma alleging discriminatory denial of job opportunities and promotions in the longshore industry (the "*Thompson* action"). In June 1997, the *Thompson* action was settled along with a parallel sex discrimination class action (the "*Scott* action") that was brought by female longshore workers Ronalyn Scott and Gail Ross. There was a *Thompson* settlement agreement, Dkt. No. 9, Exh. A, and a settlement agreement that applied to both the *Thompson* action and the *Scott* action (the "*Scott/Thompson* settlement agreement"), Dkt. No. 9, Exh. B.

The *Scott/Thompson* settlement agreement included a female foreman registration and promotion clause that stated at least one out of every five foremen registered in Tacoma (20%) would be female (the "affirmative action plan"). Dkt. No. 9, Exh. B, ¶ 8(A). The *Thompson* settlement agreement also incorporated by reference "all provisions" of the *Scott/Thompson* settlement agreement. Dkt. No. 9, Exh. A, ¶ 2. The *Scott/Thompson* settlement agreement, containing the affirmative action plan (along with the *Thompson* agreement by incorporation), was contingent upon district court approval of a modification of the consent decree in a third federal lawsuit, *Blanchfield v. I.L.W.U.*, whose male plaintiffs had intervened in the *Scott* action and objected to the *Scott/Thompson* settlement agreement's affirmative action plan for female longshore workers.

The *Scott/Thompson* settlement agreement included an attorneys' fees provision that provided as follows: "In any action to enforce any term of the agreement, the prevailing party shall recover its reasonable attorneys fees and such other relief as deemed appropriate." Dkt. No. 9, Exh. B, ¶ 18. This provision is the basis for Defendants' instant motion for attorneys' fees. *See* Dkt. No. 97.

1    By Order dated January 8, 1998, the Honorable Franklin D. Burgess approved the modification of the *Blanchfield* consent decree and the *Scott*/*Thompson* settlement agreement, including its affirmative action plan. Dkt. No. 9, Exh. C. Paragraph 14 of the Order provides that "[t]he Court will retain jurisdiction of this matter for purposes of overseeing implementation of the *Scott* settlement agreement." *Id.* The Court was referring to what has been referred to herein as the *Scott*/*Thompson* settlement agreement. That Order is the basis for this Court's jurisdiction over the instant action. *See* Dkt. No. 83.

B.    The Instant Action

In April 2006, eight years after Judge Burgess approved the *Scott*/*Thompson* settlement agreement, Plaintiff filed the instant lawsuit in King County Superior Court, alleging that she was retaliated against because of her participation in the prior *Thompson* and *Scott* actions and was denied promotion to registered foreman because of Defendants' discrimination on the basis of sex in violation of state law. Dkt. No. 9, Exh. D. In May 2007, Plaintiff filed a second amended complaint that added a claim entitled "Breach of Contract," which alleged that Defendants breached her "1997 Settlement Agreement (i.e. the *Thompson* Settlement Agreement) by failing to promote and register McAllister as a foreman from 2002 to 2006." Dkt. No. 9, Exh. F, ¶ 3.11. Defendants removed the case to federal court on the basis of the breach of contract claim because the claim was based on the *Scott*/*Thompson* settlement agreement and the court-approved affirmative action plan.

C.    The Parties' Dispute Regarding the Affirmative Action Plan

During the course of the instant action, the parties disputed the terms and meaning of Paragraph 8(A) of the *Scott*/*Thompson* settlement agreement, which concerns the affirmative action plan's female foreman promotion requirement. Therefore, on August 30, 2007, the Honorable Thomas S. Zilly ordered that the issue of the parties' disputes over the terms and meaning of Paragraph 8(A) be referred to the Honorable J. Kelley Arnold. Dkt. No. 23. The *Scott*/*Thompson* settlement agreement provided that Judge Arnold, who had presided over the

ORDER
PAGE - 3

mediation that resulted in the settlement, would decide "[a]ny disputes or disagreements as to the terms or meaning of this agreement, or any of its provisions." *See* Dkt. No. 9, Exh. B, ¶ 17. Judge Zilly also ordered that this case be reassigned to the undersigned judge based on the consent of the parties. Dkt. No. 25.

On July 17, 2008, Judge Arnold ruled that *Scott*/*Thompson* settlement agreement's affirmative action plan began on January 8, 1998 and expired on January 8, 2003, and that among the candidates promoted to registered foremen during that five-year period, 20% (or one out of every five) must be female. Dkt. No. 60. Judge Arnold also found that because 15 individuals were promoted to registered foreman from January 8, 1998 to January 8, 2003, but that only two of the 15 individuals were female, Defendants did not comply with the *Scott*/*Thompson* settlement agreement's affirmative action plan. Dkt. No. 50. In other words, Defendants breached the agreement. Had Defendants promoted just one additional female among the 15 individuals promoted to foreman from January 8, 1998 to January 8, 2003, Defendants would have complied with the affirmative action plan, because 20% of the individuals promoted to foreman during that period would have been female. *See* Dkt. No. 50.

D. <u>Defendants' Motions for Summary Judgment</u>

On August 18, 2008, Defendants filed two motions for summary judgment. *See* Dkt. Nos. 64, 71. This Court granted Defendants' motions for summary judgment and dismissed all of Plaintiff's claims by Order dated December 30, 2008. *See* Dkt. No. 95. With regard to Plaintiff's breach of contract claim—the only claim that implicates the *Scott*/*Thompson* settlement agreement's attorneys' fees provision—the Court noted that, as Judge Arnold ruled, Defendants did not comply with the agreed-upon affirmative action plan and therefore had breached the *Scott*/*Thompson* settlement agreement. However, the Court held that Plaintiff failed to adduce any competent evidence showing that, even if a foreman registration process had taken place between December 18, 2002 and January 8, 2003, Plaintiff would have been the female applicant selected. Dkt. No. 95 at 23. The Court found that all the evidence was to

1  the contrary.  *Id.*  Accordingly, Plaintiff's breach of contract claim was dismissed.  *Id.*  The
2  Court entered judgment for Defendants on December 30, 2008, and awarded costs to
3  Defendants.  Dkt. No. 96.  The instant motion for attorneys' fees followed.  *See* Dkt. No. 97.

III.  DISCUSSION

Defendants' motion for attorneys' fees is based upon Paragraph 18 of the *Scott/Thompson* settlement agreement, which provides: "In any action to enforce any term of the agreement, the prevailing party shall recover its reasonable attorneys fees and such other relief as deemed appropriate."  Dkt. No. 9, Exh. B, ¶ 18.  A federal court must apply state law in interpreting an attorneys' fees provision of a contract.  *See, e.g., Franklin Financial v. Resolution Trust Corp.*, 53 F.3d 268, 273 (9th Cir. 1995) (applying state law in interpreting an attorneys' fees provision in a contract).  Accordingly, the Court must look to state law for guidance as to whether Defendants are the "prevailing party" for the purposes of awarding attorneys' fees pursuant to the *Scott/Thompson* settlement agreement.

Defendants assert that the Court should rely upon RCW 4.84.330 for the definition of "prevailing party," which provides that the term "means the party in whose favor final judgment is rendered."  WASH. REV. CODE § 4.84.330.  Defendants contend that since judgment was entered in their favor, see Dkt. No. 96, they are the "prevailing party" as defined by RCW 4.84.330 and should therefore be awarded the requested portion of their attorneys' fees.  However, the Washington Supreme Court has recently clarified that the purpose of RCW 4.84.330 is to make unilateral contract provisions regarding attorneys' fees bilateral; that is, "[t]he statute ensures that no party will be deterred from bringing an action on a contract . . . for fear of triggering a one-sided fee provision."  *Wachovia SBA Lending, Inc. v. Kraft*, 2009 Wash. LEXIS 1, *9 (Wash. Jan. 15, 2009).  The language of RCW 4.84.330 must be read into unilateral contracts that award attorneys' fees to one party any time an action occurs, regardless of whether that party prevails or whether there is a final judgment.  *Id.*  Therefore, the statutory definition of "prevailing party" under RCW 4.84.330 should not be imposed

ORDER
PAGE - 5

where, as here, there was already a bilateral contract providing for attorneys' fees to the prevailing party. *See id.* at *10-11; *see also Walji v. Candyco, Inc.*, 57 Wn. App. 284, 287-288 (Wash. App. 1990) (rejecting statutory definition of "prevailing party" in interpreting a bilateral attorneys' fees provision). In view of the foregoing, it would not be appropriate to rule that Defendants are the "prevailing party" under the *Scott/Thompson* settlement agreement's bilateral attorneys' fees provision simply because judgment was ultimately entered in their favor on Plaintiff's contract claim. Indeed, to do so would be to ignore that Plaintiff prevailed on a key issue in this action: that Defendants breached the *Scott/Thompson* settlement agreement's affirmative action plan.

Washington case law also supports a more nuanced approach to determining who is the prevailing party in a lawsuit. The case law holds that if both parties prevail on a "major issue" in the litigation, neither party is deemed the prevailing party for the purpose of awarding attorneys' fees. *See, e.g., American Nursery Products, Inc. v. Indian Wells Orchards*, 115 Wn.2d 217, 234-35 (Wash. 1990) (holding that "because both parties have prevailed on major issues, neither qualifies as the prevailing party under the contract"); *Morrell v. Wedbush Morgan Securities, Inc.*, 143 Wn. App. 473, 488 (Wash. Ct. App. 2008) (same); *Hertz v. Riebe*, 86 Wn. App. 102, 105 (Wash. Ct. App. 1997) (same); *Marassi v. Lau*, 71 Wn. App. 912, 916 (Wash. Ct. App. 1993) (same); *Sardam v. Morford*, 51 Wn. App. 908, 911 (Wash. Ct. App. 1988) (same). Importantly, the cases generally refer to prevailing on "major issues," and not to "claims" or "causes of action."

Here, both parties prevailed on "major issues," at least with respect to Plaintiff's breach of contract claim, which is the basis for Defendants' attorneys' fees motion. A significant and hard-fought segment of this litigation prior to Defendants' motions for summary judgment concerned whether or not Defendants complied with the affirmative action plan. On that central point, Defendants were not the prevailing party: Judge Arnold ruled that Defendants breached the *Scott/Thompson* settlement agreement by not promoting one additional female

among the 15 individuals promoted to foreman from January 8, 1998 to January 8, 2003. *See* Dkt. No. 50. Therefore, it would not be appropriate to award Defendants their attorneys' fees for the portion of the litigation surrounding Judge Arnold's determination that Defendants did not comply with the affirmative action plan. In effect, Defendants would be awarded their attorneys' fees under a provision of a contract that they were found to have breached.

However, while Plaintiff may have won the proverbial battle, she lost the war: the Court found that she had not adduced any competent evidence that she was the aggrieved female longshore worker because of Defendants' breach. Dkt. No. 95 at 23. Nancy Glaser and Karen Walton each consistently scored ahead of Plaintiff during the relevant period. Therefore, Plaintiff failed to create a triable issue of fact as to whether she would have been the female applicant selected even if a foreman registration process had taken place in late 2002. Accordingly, the Court granted Defendants' motions for summary judgment and Plaintiff's breach of contract claim was dismissed. Dkt. No. 95. Given that Plaintiff and Defendants each prevailed on "major issues" with respect to Plaintiff's breach of contract claim, neither party qualifies as the prevailing party under the *Scott/Thompson* settlement agreement's attorneys' fees provision and, consequently, neither party is entitled to attorneys' fees. *See, e.g., American Nursery Products*, 115 Wn.2d at 234-35; *Morrell*, 143 Wn. App. at 488.

Defendants assert in their reply that while the Washington courts refer to both parties prevailing on "major issues" when declining to award attorneys' fees, the courts are really talking about both parties prevailing on *claims*, and since Plaintiff did not prevail on any "claim," Defendants should be awarded their attorneys' fees. Put differently, Defendants suggest that the Washington courts meant something different than what they said, and the Court declines Defendants' invitation to read "claims" from "major issues." At least in the legal context, "issue" is a more general and inclusive term than "claim." An "issue" is defined broadly by Black's Law Dictionary as "[a] point in dispute between two or more parties," whereas a "claim" is defined more narrowly as "[t]he aggregate of operative facts giving rise to

a right enforceable by a court," and "[a]n interest or remedy recognized at law."  BLACK'S LAW DICTIONARY (7th ed. 2000).  The Washington courts very likely opted for use of the term "issue" as opposed to "claim" so as to provide other courts assessing attorneys' fee awards under Washington law greater discretion in determining which party, if any, is the "prevailing party."  Given the parry and thrust of litigation, it is not always clear who the prevailing party is in the end: it can be more complex than simply comparing claims won and lost.

For example, a party may prevail on a "claim," but lose on another front, such as the damages allowed.  In *American Nursery Products*, the Washington Supreme Court upheld an award of certain damages to the defendant/counter-claimant but found for the plaintiff on a provision of the parties' contract precluding incidental and consequential damages.  The Supreme Court held that since both parties prevailed on "major issues," neither party qualified as the prevailing party, and the Supreme Court declined to award attorneys' fees.  *See American Nursery Products*, 115 Wn.2d at 234-35.  Turning to the instant case, since both parties have prevailed on "major issues" with respect to the contract claim—plaintiff demonstrated a breach but failed to establish that she was the injured party—the Court declines to award either party their attorneys' fees.

### IV. CONCLUSION

For the foregoing reasons, the Court ORDERS that Defendants' Motion for Attorneys' Fees, Dkt. No. 97, is DENIED.

DATED this 17th day of February, 2009.

*/s/ James P. Donohue*
JAMES P. DONOHUE
United States Magistrate Judge